IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | |
|---|---|
| JACK SCOTT, | ) Civil Action No. 1:08-3863-MBS-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| WACKENHUT SERVICES, INC., | ) |
| SAVANNAH RIVER SITE, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

The pro se Plaintiff, Jack Scott ("Scott"), filed this action on November 24, 2008.[1] On February 5, 2009, the Honorable Margaret B. Seymour, United States District Judge, granted Scott's motion to amend (Doc. 12 - filed on December 22, 2008). Doc. 15. On April 24, 2009, Defendant Wackenhut Services, Inc., Savannah River Site ("Wackenhut"), filed a motion to dismiss. Scott, because he is proceeding pro se, was advised on April 27, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion could result in the dismissal of his complaint. On June 4, 2009, the undersigned granted Scott's motion for an extension of time to file a response until July 17, 2009. Scott did not file a response and on July 28, 2009, the undersigned ordered that Scott advise the Court within fifteen days as to whether he wished to continue to prosecute this action. On August 14, 2009, the undersigned granted Scott an additional extension, until September 4, 2009, to file a response in opposition to Defendant's motion to dismiss.

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e) DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

Scott again did not file a response. On September 21, 2009, the undersigned recommended that this action be dismissed pursuant to Fed. R. Civ. P. 41(b) for Scott's failure to prosecute. Scott filed an objection on October 7, 2009. On January 26, 2010, Judge Seymour declined to adopt the recommendation and granted Scott an additional thirty days to respond to Defendant's motion to dismiss and recommitted this action to the undersigned for further pretrial handling. Scott filed a response on February 18, 2010, and Defendant filed a reply on February 24, 2010.

## **MOTION TO DISMISS STANDARD**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972) and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

## **FACTS**

Scott was an armed security police officer for Wackenhut, working at the United States Department of Energy ("DOE") at the Savannah River Site ("SRS"). Wackenhut is a contractor providing security and maintaining an armed protective force in a paramilitary environment at the SRS. See Defendant's Motion to Dismiss.

Scott was terminated in a reduction in force. He held a security clearance and carried weapons. Scott had to sit down with the on-site psychologist[2] every year and tell the psychologist if he had any major problems. He told the on-site psychologist in April of 2005 or 2006 that he had problems with his daughter who made threats and was unruly at home and at school. He admitted that he spanked his daughter several times. The on-site psychologist told Scott that he could not discipline his daughter and he had to find an off-site psychologist to work with him and his daughter. Scott did so and gave the off-site psychologist permission to talk with the on-site psychologist. The off-site psychologist told Scott that he could not whip his daughter. Scott states that police officers went to his house several times and found nothing. He called police because his daughter got out of

---

[2]Federal regulations require armed protective force members to be assessed periodically for psychological fitness for duty. 10 C.F.R. § 712.14(b)(1) and (f). The "designated psychologist" is a psychologist authorized by DOE to make recommendations to the designated physician or Site Occupational Medical Director about a protective force members' psychological fitness for duty under the regulations. See 10 C.F.R. § 712.33.

3

control. Scott provides that the off-site psychologist called child services and they found nothing wrong. He also states that he was the "head petitioner" for a new union at Wackenhut and after the new union was voted in he was terminated. Complaint at 3-5.

In his October 7, 2009 filing, Scott provides that he was told by Wackenhut that he could not carry a weapon at SRS because of his encounter with child services and the police department. He claims that this labeled him as a high risk and unstable person.[3] Scott states that he has no record of committing any crimes. He also provides that he was the representative that brought about a new union, he "brought it to the table in a meeting" that Wackenhut was treating workers unfairly, and he told Wackenhut that they needed to acknowledge the new union or there would be consequences. Scott believes that Wackenhut should not have been allowed to tell him that he could not spank or discipline his child. He states that he is suing for wrongful termination to include "punitive, compensatory, special, hedonic and exemplary damages." Doc. 42.

In his February 18, 2010 response, Scott states that the off-site psychologist told him that kids should never be spanked, whipped, or have any other physical aggressiveness toward them and that she called child services and told them that he beat his children unmercifully and had an anger management issue. Scott states that after that Wackenhut would no longer allow him to carry a weapon at work and he was reduced to an unarmed officer, of which there were only thirty-five

---

[3]Wackenhut provides that during an assessment interview between Scott and DOE Designated Psychologist Mary Ann Stroupe, Scott informed Stroupe of several instances of his using corporal punishment on his daughter that resulted in law enforcement being called to his home. Stroupe restricted Scott's duties as a result of the report and required him to participate in counseling with an off-site, private psychologist. Stroupe ultimately determined that Scott was unfit for armed duty under federal regulations. Defendant's Motion to Dismiss at 2.

positions, and he was number thirty-six. Scott was then terminated in a reduction of force. He claims that Defendant took this action based on his involvement with the new union. Doc. 46.

## DISCUSSION

In his original complaint, Scott appears to bring a claim pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). He may also be attempting to bring a claim under the National Labor Relations Act, 29 U.S.C. § 151 et seq. ("NLRA"). In the amendment to his complaint, he requests one hundred twenty-five million dollars in damages "for punitive and compensatory damages."[4] Doc. 12. Wackenhut contends that its motion to dismiss should be granted because Plaintiff fails to allege discrimination covered by Title VII and this Court has no jurisdiction to hear charges of unfair labor practices under the NLRA.

### A. Title VII

Wackenhut contends that Scott's Title VII claim should be dismissed because he fails to plead that Wackenhut discriminated against him on any basis that violates Title VII. Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's **race, color, religion, sex, or national origin**...." 42 U.S.C. § 2000e-2(a)(1)(emphasis added). Here, Scott has not alleged that Wackenhut discriminated against him based on any factor prohibited under Title VII. He appears to allege that he was terminated based on his role in a new labor union. Union activity, other than the "oppos[ing of] any practice made an unlawful employment practice by [42 U.S.C. § 2000e],

---

[4] Scott also states that he "would like to add mental and emotional stress and wrongful dismissal." Doc. 12. He has provided no additional jurisdictional basis for his claims.

5

or ... charg[ing], testify[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [42 U.S.C. § 2000e,]" is not protected by Title VII. See, e.g., 42 U.S.C. § 2000e-3(a); Lee v. United States Postal Serv., 882 F. Supp. 589, 596 (E.D.Tex.1995) (Title VII does not protect union activities).

### B. NLRA

Scott may be attempting to assert a claim pursuant to the NLRA for wrongful termination based on his union activities. Wackenhut contends that this court has no jurisdiction to hear charges of unfair labor practices under the NLRA.

The National Labor Relations Board ("NLRB") has the exclusive original jurisdiction over allegations of unfair labor practice charges such as discharge for union activity or anti-union animus. See Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 48 (1938)("the power to prevent any person from engaging in any unfair practice affecting commerce has been vested by Congress in the Board and the Circuit Court of Appeals")(internal quotation and citations omitted). This court lacks jurisdiction to hear Scott's claims of unfair labor practices under the NLRA. See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 242-45 (1959) (exclusive jurisdiction rests with the NLRB for any disputes that are arguably subject to § 7 or § 8 of the National Labor Relations Act);[5] see also Richardson v. Kruchko & Fries, 966 F.2d 153, 155 (4th Cir.

---

[5]Section 7 of the NLRA guarantees employees not only the "right to self-organization, to form, join, or assist labor organizations, [and] to bargain collectively," but also the right "to engage in other concerted activities for the purpose of ... mutual aid or protection." 29 U.S.C.A. § 157. Section 8(a)(1) implements these guarantees by making it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157[.]" 29 U.S.C.A. § 158(a)(1). Section 8(a)(3) makes it an unfair labor practice to discriminate "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization..." 29 U.S.C. § 158(a)(3).

1992)(holding that employee's claims for interference with business relations and intentional infliction of emotional distress against law firm that advised her employer in labor and employment matters were preempted by NLRA).

## **CONCLUSION**

Based on the foregoing, it is recommended that Defendant's motion to dismiss (Doc. 26) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

March 1, 2010
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).